BESSIE POSS, joined by her husband, CHARLES C. POSS, v. MARGUERITE CRAVEN, widow, individually and as administratrix of the estate of CHARLES CRAVEN, deceased.

BESSIE POSS, joined by her husband, CHARLES C. POSS, v. MARGUERITE CRAVEN, as administratrix of the estate of CHARLES CRAVEN, deceased.

15 So. (2nd) 671                                    June Term, 1943
November 23, 1943                                    Division B

*C. B. Peeler,* for appellants.

*Frank T. Cannon* and *H. A. Williams,* for appellee.

THOMAS, J.:

In a suit by Bessie Poss, mother of Charles Craven, deceased, against his widow as an individual and as administratrix of his estate, the chancellor granted a motion to dismiss the bill of complaint.

Plaintiff sought the proceeds of an insurance policy which had been paid to the defendant by the insurer. We will summarize the facts given in the bill and claimed sufficient to warrant this relief.

The American steamship Norlovore sailed from Baltimore bound for Venezuela 21 February 1942 and three days later sent out an SOS giving a position off Diamond Shoals. No further word was ever received from her and when the vessel was two months overdue "United States Mariner Commission" notified the owners that ship and crew were presumed

lost by enemy action, submarines having been active at the time in that area.

Among those who perished was Charles Craven, second mate.

Each officer and crew member was insured as "evidenced by a Cover Note and insurance policy issued by the Underwriters at Lloyds, London . . . ," to the amount of $5000 for loss of life, $300 for loss of personal effects (of an officer).

At the time he became second officer of the Norlavore for the voyage Charles Craven signed "shipping articles" otherwise described as "Articles of Agreement Between Master and Seamen in the Merchant Service of the United States Required by Act of Congress, Title LIII, Revised Statutes of the United States (U.S.C., title 46, c. 18)." Opposite each signature were provided spaces for data descriptive of the signer such as physical characteristics, origin, qualifications. One of these spaces was designated "Address of Wife or Next of Kin" and here, following the name of Charles Craven, appeared "Mo. Bessie Poss 200 R. I. Ave. N. E. Wash D. C.". The plaintiff relied upon his entry to establish the mother as payee of the policy insuring personnel of the ship.

We turn now to the salient feature of the cover note executed by the New York agent of Lloyds, the provision titled "PAYEES," the first sentence of which plaintiff chose to stress in the bill. It is: "All payments provided for in this policy will be made only to the master, officer, or member of the crew concerned, except that a payment for loss of life will be made to the beneficiary designated by the master, officer or seaman at the time *he signs on.*" The italics were supplied by the pleader. It was alleged that the shipping articles were the only instrument signed by the unfortunate officer when he "signed on," hence, so it was urged, the entry there of the mother's name was, in effect, a designation of her beneficiary of the policy.

There followed in the bill a quotation from the next sentence of the cover note about payees: "The appearance of the name of such a beneficiary upon a copy of the signed beneficiary list or individual beneficiary designation, attested by the shipowner, shall be conclusive evidence of such desig-

nation and payment to such named beneficiary shall thereby entirely discharge Assurer's liability. . . ."

Plaintiff undertook to account for the absence of a "beneficiary list" or "beneficiary designation" by averring that rules of the Maritime Commission authorizing or requiring the policy had been in effect but a short time, therefore the lists had not been prepared or distributed and the "officers . . . of . . . the . . . Steamship Norlavore . . . did not sign any 'beneficiary list or individual beneficiary designation' papers . . . ." It is again insisted that in view of this exigency the naming of appellant in the shipping articles satisfied that requirement with reference to designation of a beneficiary upon the list.

The widow was appointed administratrix and in that capacity was paid $5300 by the insurer. She has claimed in a proceeding before the County Judge of Duval County that she is entitled to $5000 of this amount as widow of Charles Craven, no children having survived him, and that the remainder of $300 should be administered by her as the entire assets of his estate.

Not wishing to omit any feature of the bill we point out at the conclusion of this analysis of it that plaintiff alleged the estrangement of Charles Craven and appellee and the institution of a suit for divorce by him against her within a week before the ill-fated Norlavore set out on her last voyage. This was relied upon to bolster the equity of appellant's position. There is some dependence, too, on visitation on the insurance contract of the "customs and usages among seafaring men" on the Atlantic seaboard.

It seems to us that the three questions may be stated as one namely: Is the mother, the wife, or the administratrix entitled to the proceeds amounting to $5000? and we think the first two phases may be determined by the plain language of the insurance contract. Obviously the insurer was obligated to pay any proceeds accruing under the policy to any beneficiary named by the insured while he was a member of the ship's personnel within the period stated in the contract. His status was fixed when he signed the articles. The con-

tract was not one directly between the insurance company and the officer, Craven, but covered all those serving as officers and crew members on the ship between 14 January 1942 and 14 April 1942. The signature of the articles fixed the time when designation should be made but was not in itself the act of designation. That there might have been failure to name a beneficiary was anticipated for immediately following the portions of the policy we have quoted appeared the provision that "In the absence of such designation of named beneficiary . . . payment [if deceased appeared on the articles as an American citizen] will be made to the executor or administrator in the United States. . . ." That is precisely what was done.

We apprehend that the purpose of requiring the officer or seaman to give the address of wife or nearest relative was to provide a means of advising the family in event of injury, death or disaster. The articles and entries on it were no part of the insurance contract and, to repeat, could have no relevancy to the issue except to fix the time that the deceased became a member of the ship's company, hence entitled to the benefits of insurance protecting them. It will have been noted that the title in the articles, under which Charles Craven had the appellant's name written, did not include the "name" but only the "address of wife or next of kin." Presumably an address without the name of any particular person would have been a sufficient registration.

We think appellant's position is not strengthened by reference to custom or usage among seafarers on the Atlantic coast. The act of Congress and amendments thereto anent shipping articles were of many years standing. Patently, the cover note was designed for the protection of officers and seamen because of the added dangers of sailing the seas in war time. It so stated and was executed 15 January 1942, little more than a month after Pearl Harbor. Even assuming that proof of custom could materially affect interpretation of the contract it is difficult to see how custom could have, in such a short period developed to the extent of making one of these wholly independent instruments effective upon the other.

The estrangement of the parties was circumstance not in all events irrelevant but standing alone or weighed with the other circumstances in this particular case it was of small importance.

We reach the view that the last cited clause of the contract obtained when no beneficiary was designated as contemplated in the cover note. Charles Craven having been an American citizen, payment was properly made to the administratrix of his estate.

Finally, it is our view that the order of the county judge, affirmed by the circuit court, holding this money to be the property of Marguerite Craven and not an asset of the estate of Charles Craven, deceased, was correct. Sec. 222.13, Florida Statutes 1941, Sec. 222.13 F.S.A.

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.